UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
CIVIL ACTION NO. 8:16-cv-00166-JSM-MAP

ANTONIO SUAREZ, FERNANDO )
ALEGRIA, HILLARY MITCHELL, )
and JUDHIT SANTANDER, )
 )
      Plaintiffs, )
v. )
 )
UBER TECHNOLOGIES, INC., )
 )
      Defendant. )
_____)

**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STRIKE
CLASS/COLLECTIVE ALLEGATIONS**

Defendant, Uber Technologies, Inc., pursuant to 9 U.S.C. § 1 et seq. and M.D. Fla. L.R. 3.01, moves for the entry of an order dismissing this action or alternatively, staying all proceedings unless and until Plaintiffs fulfill their contractual and statutory obligations to arbitrate their *individual* claims asserted in this action. The grounds for this motion are more fully set forth below in Defendant's Memorandum of Law, pursuant to M.D. Fla. L.R. 3.01(a).

**MEMORANDUM OF LAW**

**I.    Introduction**

Plaintiffs, Antonio Suarez, Fernando Alegria, Hillary Mitchell, and Judhit Santander have voluntarily entered into valid and enforceable arbitration agreements and have agreed to arbitrate the claims asserted in this action. The parties' arbitration agreement provides that it "applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to [Plaintiffs'] relationship with the Company," including, but not limited to, "disputes regarding any city, county, state or federal wage-hour law, . . . unfair competition,

compensation, ... the Fair Labor Standards Act, . . . and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims." The agreement further states, in bold font, that the parties: "agree to resolve any disputes in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis." Finally, the parties also expressly delegated threshold issues, related to the enforceability and validity of the arbitration agreement, *to the arbitrator*.

Despite being bound by a valid arbitration agreement covering virtually all claims arising out of their relationship with Defendant, including their alternative federal and state statutory wage claims, Plaintiffs filed the instant lawsuit on behalf of themselves and a putative class of other Uber drivers. These claims are subject to arbitration and dismissal pursuant to the Federal Arbitration Act. Accordingly, the Court should dismiss the Complaint in its entirety and enter an Order compelling Plaintiffs to arbitrate their claims on an individual basis or, alternatively, strike the class claims and stay the remaining individual claims, pending completion of arbitration.

**II.     Plaintiffs' Agreements to Arbitrate**

Each of the four named Plaintiffs signed up to use the Uber App to connect with potential passengers using the "uberX" platform so that they could have the opportunity to transport those passengers for afare. (Colman Decl., ¶¶ 9 & 2).[1] However, in order to access the uberX platform to accept ride requests from prospective passengers, Plaintiffs were first required to electronically accept the applicable Software License and Online Services Agreement, dated November 10, 2014. ("Services Agreement") (Colman Decl., ¶¶ 5 & 9). When Plaintiffs logged on to the Uber App using their unique user names and passwords, they had the opportunity to review the Services Agreement by clicking a hyperlink within the Uber App.

---

[1] The Declaration of Michael Colman is attached hereto and incorporated herein.

(Colman Decl., ¶ 7).  To advance past the screen with the hyperlink to the Services Agreement, Plaintiffs had to confirm that they had first reviewed and accepted the Services Agreement by clicking "YES, I AGREE."  (Colman Decl., ¶ 7).  After clicking "YES, I AGREE," they were prompted to confirm their review and acceptance of the Services Agreement *a second time*.  (Colman Decl., ¶ 7).

Plaintiffs were free to spend as much time as they wished reviewing the applicable agreement on their smartphones or electronic devices.  (Colman Decl., ¶¶ 7 & 8).  After confirming their acceptance a second time through the Uber App, the Services Agreement was immediately sent to each Plaintiff's driver portal, where Plaintiffs could access the agreement to review at their leisure, either online on any device or by printing a copy.  (Colman Decl., ¶ 8 & 12).

Finally, even after *twice* confirming their review and acceptance of the Services Agreement, Plaintiffs were provided an additional 30 days to opt-out of the Arbitration Provision, which could be accomplished as simply as sending an email to "optout@uber.com,"

> **Your Right To Opt Out Of Arbitration.**
>
> **Arbitration is not a mandatory condition of your contractual relationship with the Company.  If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision. . . . Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision.  You have the right to consult with counsel of your choice concerning this Arbitration Provision.  You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.**

(Colman Decl., ¶ 11 & Ex. C).

The Services Agreement also contains extensive cautionary notices, both at the beginning

of the agreement and before the Arbitration Provision, that advised Plaintiffs of the ramifications of agreeing to arbitration and of choosing not to opt-out, as well as of certain pending litigation against Defendants. (Colman Decl., Ex. C). Plaintiffs accepted the Services Agreement and did not opt out despite having the unfettered right to do so. (Colman Decl., ¶ 11).

The Services Agreement contains an arbitration agreement (the "Arbitration Provision"), which broadly requires transportation providers, *if they do not opt out*, to arbitrate *all* disputes (with certain exceptions not relevant here) arising out of or related to the agreement or their relationship with Uber, including disputes alleging breach of contract, wage and hour claims, unfair competition, or any other claims brought under similar state and federal statutes. (Colman Decl., Ex. C). The Arbitration Provision, in relevant part, reads as follows:

> This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving commerce. This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates. . . .
>
> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**
>
> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.
>
> Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship.

(Colman Decl., Ex. C at 15-16 (bold in original)).  The Arbitration Provision further provides that Plaintiff must pursue any claims in arbitration "**on an individual basis only, and not on a class, collective . . . basis.**" (*Id*. at 17 (bold in original)).  The Arbitration Provision also states that, "**[t]he Arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis.**" *Id.* (bold in original).

On July 16, 2015, Suarez accepted, through the Uber App, the Services Agreement. (Colman Decl., ¶ 10).  Alegria accepted the Services Agreement on September 25, 2015.  (*Id*.). On March 12, 2015, Mitchell accepted, through the Uber App, the November 2014 Services Agreement. (*Id*.).  Finally, Plaintiff Santander accepted the Services Agreement on July 8, 2015 and again on October 5, 2015 and December 21, 2015.   (*Id*.).[2]  While numerous independent transportation providers have opted out of the Arbitration Provision, and Plaintiffs were afforded the same opportunity to opt-out, Plaintiffs never attempted to do so.  (*Id*.).

### III.   Plaintiffs' Complaint

Plaintiffs allege that each of them were "drivers for Uber."  Compl. ¶1.  They further allege that "[t]hrough a mobile phone software application, UBER connects local travelers who seek transportation via automobile with local drivers."  Compl. ¶ 9.  Plaintiffs then allege Uber has misclassified Plaintiffs and other drivers as independent contractors, rather than as employees. Compl. ¶ 4, 15.  As a result, Plaintiffs allege, they "(1) are not paid for all of the hours that they actually work; (2) are not paid at least the minimum wage required by Federal law for each hour worked; and, (3) are not paid overtime compensation for hours that they actually work in excess of 40 hours in one week." Compl. ¶ 18.  Finally, Plaintiffs assert that such alleged underpayment or nonpayment of wages violated the requirements of

---

[2] Santander also accepted a subsequent version of the Services Agreement, also containing an Arbitration Provision, on both December 12, 2015 and again on December 21, 2015.

the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), Internal Revenue Code, 26 U.S.C. § 7434 ("IRC"), and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et seq.* ("FDUTPA").

In Count I, Plaintiffs attempt to allege claims for unpaid *minimum* wages under the FLSA. Compl. ¶¶ 39-48. Count II Plaintiffs attempt to allege claims for unpaid *overtime* wages under the FLSA. Compl. ¶¶49-57. In Count III, Plaintiffs attempt to allege a claim under FDUTPA based upon the same allegations of unpaid wages incorporated from the previous FLSA claims/counts. Compl. ¶¶ 76-88. In Count IV, Plaintiffs attempt to allege a violation of the Internal Revenue Code, 26 U.S.C. § 7434. Compl. ¶¶76-79 [sic][3] This purported "IRS claim" incorporates the same previous allegations of unpaid wages from counts I and II, the FLSA claims. Compl. ¶ 77[4] Finally, Plaintiffs attempt to allege a basis to bring a collective action on their FLSA claims, and a class action on their FDUTPA and IRC claims. (Compl. ¶¶ 1, 9-38, 58-75).

IV. **Plaintiffs' Claims Are Subject To Arbitration Pursuant to the FAA.**

The enforceability of an arbitration agreement in federal court is generally governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq. See e.g., Caley v. Gulfstream Aerospace Corp.* 428 F. 3d 1359 (11th Cir. 2005).[5] The purpose of the FAA was to reverse judicial hostility

---

[3] The Complaint contains *duplicate* paragraphs 76-79.

[4] See note 1.

[5] The Arbitration Provision at issue here is indisputably governed by the FAA. First, the Arbitration Provision expressly provides it is subject to the FAA. *See Buckeye Check Cashing*, 546 U.S. at 442-43 (where arbitration agreement expressly provided that FAA was to govern, FAA preempted application of state law and the question of the contract's validity was left to the arbitrator); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995) (for state law to apply exclusively to an arbitration agreement, the agreement must opt out of the FAA and express that state law applies). Second, the Service Agreements containing the Arbitration Provision, involve commerce. The Uber App is available to drivers and riders in over 100 cities across the U.S. (Colman Decl., ¶ 5.) Thus, Plaintiffs' use of the Uber App pursuant to the Services Agreement is sufficiently involved in commerce to bring that agreement within the FAA. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (finding requisite commerce for FAA coverage even when the individual transaction did not have a substantial effect on commerce).

toward arbitration and thus the Act embodies a liberal federal policy favoring arbitration agreements. *Id.* at 1367 [citations omitted]. Thus, the FAA gives arbitration agreements the same force and effect as other contracts under state law and preempts any state law to the extent that it imposes a greater burden on a party seeking to enforce an arbitration agreement. *Id.* at 1367-68.

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*See* 9 U.S.C. §2.

To enforce Section 2 above, 9 U.S.C. §§3 and 4 provide, in relevant part, as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
>
> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, *for an order directing that such arbitration proceed in the manner provided for in such agreement.*
> …
> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, *the court shall make an order directing*

7

> *the parties to proceed to arbitration in accordance with the terms of the agreement.* (Emphasis supplied).

The FAA "embodies a 'liberal federal policy favoring arbitration agreements.'" *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The purpose of the FAA was "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998) (quotation marks, brackets, and citation omitted).

In *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S.Ct. 1758, 1774 (2010), the Supreme Court reiterated the long-standing policy that parties are free to agree on the issues they wish to arbitrate and the "rules under which any arbitration will proceed." Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25. see also *Ruby–Collins, Inc. v. City of Huntsville, Ala.*, 748 F.2d 573, 576 (11th Cir.1984) ("[F]ederal policy requires that we construe arbitration clauses generously, resolving all doubts in favor of arbitration."). Thus, "courts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA." *Weeks v. Harden Mfg. Corp.,* 291 F.3d 1307, 1313 (11th Cir. 2002); *see Circuit City v. Adams*, 532 U.S. 105, 123 (2001); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

Thus "[t]he FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable "under ordinary state-law" contract principles and (b) the claims before the Court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir.

2008). As set forth below, the parties to this action entered into enforceable arbitration agreements under Florida law and all of the claims asserted in this action fall directly within the scope of that agreement to arbitrate.

### A. The Arbitration Provision Delegates The Gateway Issues To The Arbitrator

Before the Court reaches these gateway issues, it must first examine the underlying contract to determine whether the parties have agreed to commit the threshold question of arbitrability to the arbitrator. *Rent-A-Center, W., Inc.*, 561 U.S. at 70 ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Buckeye Check Cashing*, 546 U.S. at 446. If so, under *Rent-A-Center*, the arbitrator rather than the court, must address the threshold question of arbitrability. *See Johnson v. Western & Southern Life Ins. Co.*, 598 Fed. Appx. 454, 455-56 (7th Cir. 2015).

Here, the Arbitration Provision clearly and unmistakably provides that it is a "full and complete agreement relating to the formal resolution of disputes arising out of this Agreement," and that "disputes arising out of or relating to interpretation or application of this Arbitration Provision, ***including the enforceability, revocability or validity of the Arbitration Provision*** or any portion of the Arbitration Provision" shall be decided by an arbitrator, not a court. (Colman Decl., Ex. C) [emphasis added]. Therefore, any question as to the validity of the Arbitration Provision and whether it applies to this dispute, has been delegated to, and should be decided by, the arbitrator in the first instance. *American Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (noting that the text of the FAA "reflects the overarching principle that arbitration is a matter of contract" and "courts must rigorously enforce arbitration agreements according to

their terms, including terms that specify with whom the parties choose to arbitrate their disputes").

### B. Plaintiffs Entered Into An Enforceable Agreement To Arbitrate.

Even if the parties had not expressly delegated these issues to the arbitrator, both of the gateway issues are satisfied and the Court should compel Plaintiffs' to arbitrate their claims. "[T]he threshold questions a district court must answer when determining whether a case may be properly referred to arbitration are: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the specific dispute falls within the scope of the agreement." *Hudson Global Res. Mgmt. v. Beck*, 2006 U.S. Dist. LEXIS 40904, *15 (M.D. Fla. 2005). Though federal courts apply state contract law in determining the existence of an agreement to arbitrate, "federal policy *favoring* arbitration, is taken into consideration even in applying ordinary state law." *Caley,* 428 F. 3d at 1368 [emphasis added, citation omitted]. And, in any event, Florida likewise favors arbitration as a matter of public policy. *KFC National Management Co. v. Beauregard*, 739 So. 2d 630 Fla. 5th DCA 1999).

To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove three elements: "'offer, acceptance, consideration and sufficient specification of essential terms.'" See e.g., *Schoendorf v. Toyota of Orlando,* 2009 WL 1075991 (M.D. Fla. Apr.21, 2009) (quoting *St. Joe Corp. v. McIver,* 875 So.2d 375, 381 (Fla. 2004)). Here, the parties voluntarily entered into a written mutual agreement to arbitrate any disputes, as evidenced by Plaintiffs' acceptance (in some cases repeatedly) of the Services Agreement and their failure to exercise their subsequent opportunity to opt-out of the arbitration provision. This is more than sufficient to establish Plaintiffs' acceptance of the Arbitration Agreement. Compare *Dorward v. Macy's Inc.,* 2011 WL 2893118, *11 (M.D. Fla. July 20, 2011) (holding that the

plaintiff's signature on a new hire acknowledgment form, which referred to a brochure containing the arbitration agreement, was sufficient to show the plaintiff assented to the arbitration agreement and "Plaintiff's alleged ignorance of the contents of [the brochure] ha[d] no bearing on her duty to arbitrate according to its terms") and *Sultanem v. Bright House Networks, L.L.C.,* No. 8:12–cv–1739–T–24, 2012 WL 4711963, *2 (M.D.Fla. Oct.3, 2012) (holding plaintiff's denial of receipt of arbitration agreement alone not sufficient to create issue of fact as to existence of arbitration agreement where plaintiff signed work orders acknowledging agreement containing arbitration clause). Thus, Plaintiffs clearly and unmistakably assented to be bound by the terms of the Arbitration Agreement and there are no grounds to argue that the agreement is not enforceable under Florida contract law.

## C.     Plaintiffs' Claims Fall Within the Scope of Their Agreement to Arbitrate.

The claims asserted by Plaintiffs fall squarely within the scope of their arbitration agreement.  The Arbitration Provision requires arbitration of ***all*** disputes arising out of or related to the Services Agreement, including disputes alleging breach of contract, wage and hour claims, unfair competition, or any other claims brought under similar state and federal statutes.  The claims asserted in Plaintiffs' Complaint clearly arise from the contractual relationship created by the Services Agreement.  Indeed, the basis of each and every one of Plaintiff's claims is that they were misclassified as independent contractors with respect to services they performed **pursuant to *the Services Agreement*** and they challenge the ***express terms of the Services Agreement*** confirming their independent contractor status.  Further, their overtime and minimum wage claims are brought pursuant to the FLSA, which is among the statutes specifically enumerated in the Arbitration Provision.  Plaintiffs' additional claims under the IRC and FDUTPA are based entirely on these incorporated FLSA claims and are thus "similar federal and state statutory ...

11

claims" expressly included within the scope of the Arbitration Provision. Thus, Plaintiffs' claims are indisputably within the express scope of the Arbitration Provision.

**V.      Plaintiffs Class/Collective Claims Are Precluded by Their Agreement to Arbitrate.**

In addition to their agreement to arbitrate the substantive claims asserted in this action, Plaintiffs expressly agreed that such claims would be limited to their individual claims and not class or collective claims they have attempted to assert. This waiver of class or collective actions in the Arbitration Provision is valid and enforceable. The U.S. Supreme Court has expressly upheld the validity of such class and collective action waivers in arbitration agreements, acknowledging that class and collective actions are inconsistent with the benefits afforded by arbitration. *See American Express Co. v. Italian Colors Rest.,* 133 S. Ct. 2304, 2309 (2013); *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1748-1751 (2011) (finding that "the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution" and that class arbitration would sacrifice the principal advantage of arbitration and make the process "slower, more costly, and more likely to generate procedural morass"); *Stolt-Nielsen S.A. v. Anima/Feeds Int"/ Corp.,* 130 S. Ct. 1758, 1775 (2010) ("a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so.")  See also *McKenzie Check Advance of Florida, LLC v. Betts,* 112 So.3d 1176 (Fla. 2013) (citing *Concepcion* and holding that, to the extent Florida has held class action waivers void against public policy, such holdings are preempted by the FAA); and *Cruz v. Cingular Wireless, LLC,* 648 F.3d 1205, 1207 (11th Cir. 2011) (same).

Accordingly, the Eleventh Circuit and numerous other federal circuit courts have consistently upheld the applicability of arbitration agreements and class action waivers to wage

and hour claims brought pursuant to the FLSA.  *See, e.g.*, *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1336 (11th Cir. 2014) (finding that the FLSA contains no explicit provision precluding arbitration or a waiver of the right to a collective action and stating, "[i]n every case the Supreme Court has considered involving a statutory right that does not explicitly preclude arbitration, it has upheld the application of the FAA."); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005); *Sutherland v. Ernest & Young LLP*, 726 F.3d 290, 296-97 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013); *Vilches v. Traveler's Cos.*, 413 Fed. Appx. 487, 494 n.4 (3d Cir. 2011); *Horenstein v. Mort. Mkt., Inc.*, 9 Fed. Appx. 618, 619 (9th Cir. 2001); *Carter v. Countrywide Credit Indus. Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002). As each of Plaintiffs' claim expressly incorporate their claims of wages due under the FLSA, and neither the FLSA, FDUTPA nor the IRC prohibit enforcement of the arbitration agreement, Plaintiffs should be compelled to arbitrate these claims, and to do so on an *individual* basis as they have agreed.

**VI.    Conclusion**

The parties to this action entered into valid and binding contracts under Florida law and those contracts included an agreement to arbitrate a broad category of disputes.  Plaintiffs' claims in this action are brought under federal and state statutes expressly included in the Arbitration Provision and arise directly from the performance of the parties Services Agreement containing the Arbitration Provision.  Accordingly, pursuant to the Sections 3 and 4 of the Federal Arbitration Act, this action should be dismissed and Plaintiffs required to submit their individual claims to arbitration.  Alternatively, this action should be stayed pending the resolution of the arbitration of Plaintiffs' individual claims.

## CERTIFICATE OF COUNSEL

Pursuant to M.D. Fla. L.R. 3.01(g), prior to filing this motion undersigned counsel for Defendants has conferred in good faith with Plaintiff's counsel, via telephone conference on February 22, 2016, regarding the relief sought in this motion.  Plaintiffs object to the relief sought herein and indicate they will oppose this Motion.

**WHEREFORE**, Defendants, respectfully request that this Court grant this Motion, dismiss this action and compel Plaintiffs to submit their individual claims to arbitration, as their agreement requires.

DATED:  this 7th day of March, 2016

Respectfully submitted,

/s/ *Courtney B. Wilson*
Courtney B. Wilson, Esq.
Florida Bar No. 0614580
E-mail: cwilson@littler.com
Secondary:  kljackson@littler.com
Littler Mendelson, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone:  (305) 400-7500
Facsimile:   (305) 603-2552

Anthony J. Hall, Esq.
Florida Bar No. 40924
E-mail:  AJHall@littler.com
Littler Mendelson, P.C.
111 North Magnolia Avenue
Suite 1250
Orlando, FL 32801
Telephone:  (407) 393-2900
Facsimile:   (407) 393-2929

*COUNSEL FOR DEFENDANT*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 7th day of March, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se identified on the attached Service List in the matter specified either via transmission of notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

BY: /s/ *Courtney B. Wilson*  
Courtney B. Wilson, Esq.

**SERVICE LIST**

Luis A. Cabassa, Esq.
Florida Bar No. 053643
E-Mail:  lcabassa@wfclaw.com
Brandon J. Hill, Esq.
Florida Bar No. 37061
E-Mail:  bhill@wfclaw.com
Secondary:  mkimbrough@wfclaw.com
           jriley@wfclaw.com
Wenzel Fenton Cabassa, P.A.
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Telephone:  (813) 224-0431
Facsimile:   (813) 229-8712

*COUNSEL FOR PLAINTIFFS*

Courtney B. Wilson, Esq.
Florida Bar No. 0614580
E-mail: cwilson@littler.com
Secondary:  kljackson@littler.com
Littler Mendelson, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 400-7500
Facsimile: (305) 603-2552

Anthony J. Hall, Esq.
Florida Bar No. 40924
E-mail:  AJHall@littler.com
Littler Mendelson, P.C.
111 North Magnolia Avenue
Suite 1250
Orlando, FL 32801
Telephone:  (407) 393-2900
Facsimile:   (407) 393-2929

*COUNSEL FOR DEFENDANTS*

Firmwide:138968071.3 073208.1145