**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANTONIO SUAREZ, individually and on
behalf of others similarly situated,

      Plaintiffs,

v.                                                              CASE NO:  8:16-cv-166-T-30MAP

UBER TECHNOLOGIES, INC.,

      Defendant.
_____/

**ORDER**

THIS CAUSE comes before the Court upon Defendant's Motion to Compel
Arbitration and Strike Class/Collective Allegations (Dkt. #7), Plaintiffs' Response in
Opposition (Dkt. #19), and Defendant's Reply Memorandum (Dkt. #30).  The Court, having
reviewed the motion, response, reply, and being otherwise advised in the premises, concludes
that the motion should be granted.

**BACKGROUND**

Plaintiffs, who were drivers for Defendant Uber Technologies, Inc. during the relevant
time, allege that Uber misclassified them and other drivers as independent contractors, rather
than as employees.  As a result, Plaintiffs assert the following claims under the Fair Labor
Standards Act ("FLSA"): they were not paid for all of the hours they actually worked; they
were not paid at least the Federal minimum wage for each hour worked; and they were not

paid overtime compensation for hours they worked in excess of forty hours in one week. Plaintiffs also bring claims under the Internal Revenue Code ("IRC") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") that incorporate the same allegations of unpaid wages from the FLSA claims. Finally, Plaintiffs allege a collective action on their FLSA claims and a class action on their FDUTPA and IRC claims.

Uber moves to compel arbitration and strike the class/collective allegations based on arbitration agreements that each Plaintiff executed in connection with their employment. Uber argues that the arbitration agreements are enforceable and cover the claims asserted in this action. Uber also moves to strike the class/collective allegations because the arbitration agreements state that the parties agree to resolve their disputes in arbitration on an individual basis only. The relevant facts related to the arbitration agreements now follow.

Uber is a technology company that acts as a conduit between riders looking for transportation and drivers looking for riders. Uber provides the technology, through its smartphone application (the "Uber App") that allows riders and drivers to connect based on their location.

Each of the four named Plaintiffs signed up to use the Uber App to connect with potential passengers using the "uberX" platform so that they could have the opportunity to transport those passengers for a fare. In order to access the uberX platform to accept ride requests from prospective passengers, Plaintiffs were first required to electronically accept the applicable Software License and Online Services Agreement, dated November 10, 2014 ("Services Agreement"). When Plaintiffs logged on to the Uber App using their unique user

names and passwords, they had the opportunity to review the Services Agreement by clicking a hyperlink within the Uber App. To advance past the screen with the hyperlink to the Services Agreement, Plaintiffs had to confirm that they had first reviewed and accepted the Services Agreement by clicking "YES, I AGREE." After clicking "YES, I AGREE," they were prompted to confirm their review and acceptance of the Services Agreement a second time.

Plaintiffs were free to spend as much time as they wished reviewing the applicable agreement on their smartphones or electronic devices. After confirming their acceptance a second time through the Uber App, the Services Agreement was immediately sent to each Plaintiff's driver portal, where Plaintiffs could access the agreement to review at their leisure, either online, or by printing a copy.

The Services Agreement contains an arbitration agreement (the "Arbitration Provision") that requires transportation providers, if they do not opt out, to arbitrate all disputes (with certain exceptions not relevant here) arising out of or related to the agreement or their relationship with Uber, including disputes alleging breach of contract, wage and hour claims, unfair competition, or any other claims brought under similar state and federal statutes. The Arbitration Provision, in relevant part, provides as follows:

> IMPORTANT: This arbitration provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis pursuant to the terms of the Agreement unless you choose to opt out of the arbitration provision. This provision will preclude you from bringing any class, collective, or representative action against the Company or Uber . . .
>
> . . .

**WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION. IT IS YOUR DECISION TO MAKE, AND YOU SHOULD NOT RELY SOLELY UPON THE INFORMATION PROVIDED IN THIS AGREEMENT AS IT IS NOT INTENDED TO CONTAIN A COMPLETE EXPLANATION OF THE CONSEQUENCES OF ARBITRATION.  YOU SHOULD TAKE REASONABLE STEPS TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH OTHERS . . .**

. . .

This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving commerce. This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates. . . .

**Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a  court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**

Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.

Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship.

(Colman Decl., Ex. C at 15-17 (bold in original)).

Notably, after twice confirming their review and acceptance of the Services

Agreement, Plaintiffs were provided an additional thirty days to opt out of the Arbitration

Provision, which could be accomplished by simply sending an email to "optout@uber.com" as follows:

> **Your Right To Opt Out Of Arbitration.**
>
> **Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision. . . . Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision. You have the right to consult with counsel of your choice concerning this Arbitration Provision. You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.**

(Colman Decl., ¶ 11 & Ex. C).

The Services Agreement also contains cautionary notices, both at the beginning of the agreement and before the Arbitration Provision, that advise Plaintiffs of the ramifications of agreeing to arbitration and of choosing not to opt out, as well as of certain pending litigation against Defendant.

Each named Plaintiff in this action accepted the Services Agreement. Numerous Uber drivers have elected to opt out of the Arbitration Provision. Plaintiffs did not elect to opt out of the Arbitration Provision. The Court now turns to the relevant law regarding the enforceability of the Arbitration Provision.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement in any contract involving commerce "shall be valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption—"a national policy"—in favor of arbitration." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (citing *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006); *accord AT & T Mobility LLC v. Concepcion,* 563 U.S. 333, 337-39 (2011); *Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 72 (2010); *Inetianbor v. CashCall, Inc.,* 768 F.3d 1346, 1349 (11th Cir. 2014)).

"Importantly, parties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable. The Supreme Court has upheld these so-called 'delegation provisions' as valid, *Rent-A-Center,* 561 U.S. at 68-70, and explained that they are severable from the underlying agreement to arbitrate, *Buckeye,* 546 U.S. at 445." *Parnell*, 804 F.3d at 1146-47. If a plaintiff raises a challenge to the contract as a whole and the arbitration agreement contains a delegation provision, the district court may not review his claim because it has been committed to the power of the arbitrator. Under these circumstances, the plaintiff must "challenge[ ] the delegation provision *specifically.*" *Rent-A-Center,* 561 U.S. at 72 (emphasis added). The district court must treat the delegation provision as valid and must enforce it unless the plaintiff challenges the delegation provision itself. *Id.*

Notably, the same presumption of arbitrability does not apply to agreements delegating authority over gateway issues. *See Parnell*, 804 F.3d at 1146-47. "Courts should

not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id*. (citations omitted).

## DISCUSSION

Plaintiffs do not dispute that a valid contract was formed when they assented to the Services Agreement; they also do not dispute the fact that they did not opt out of the Arbitration Provision. The crux of Plaintiffs' opposition is that the Arbitration Provision is unconscionable as a whole. Defendant argues that, through the Delegation Clause, the parties clearly and unmistakably agreed to arbitrate questions of arbitrability, which would include the issue of whether the Arbitration Provision is unconscionable. The Court first turns to this threshold issue.

## I.     Clear and Unmistakable Intent

The Delegation Clause at issue here provides that "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge." Notably, Plaintiffs do not *directly* challenge the validity of the delegation provision. As such, Defendant's motion should be granted on this basis alone and adjudication of Plaintiffs' attacks on the Arbitration Provision should be left to the arbitrator because it is clear and unmistakable that the parties agreed to arbitrate arbitrability. *See Sena v. Uber Technologies Inc.*, No. CV-15-02418-PHX-DLR, 2016 WL 1376445, *3-*4 (D. Ariz. April 7, 2016) (analyzing identical delegation clause and concluding that "[g]iven the plain language of the

Delegation Clause, the Court finds that the parties clearly and unmistakably intended to arbitrate questions of arbitrability."); *see also Rent-A-Center*, 561 U.S. at 68 (analyzing a similar delegation clause and finding a clear and unmistakable delegation of threshold questions to the arbitrator).

However, even if the Court were to analyze the validity of the Arbitration Provision as a whole, Plaintiffs' unconscionability arguments fail on the merits.

## II.   Unconscionability

### A.   Choice of Law

As Defendant points out, two considerations require that Florida law applies to the Court's unconscionability analysis.  First, in diversity cases, federal courts apply the forum state's choice of law rules.  *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).  Second, although Plaintiffs urge the Court to apply California law to the question of unconscionability because the Services Agreement contains a California choice of law provision, the Court must confine its analysis to the Arbitration Provision, which contains no choice of law provision.  *See Nitro-Lift Techs., L.L.C. v. Howard*, 133 S.Ct. 500, 503 (2012) (discussing the principle of severability); *Sena*, 2016 WL 1376445 at *4-*5 (analyzing nearly identical arbitration provision in a similar Uber case and holding that "the Court must confine its analysis to the Arbitration Provision, which contains no choice of law provision.").  Florida has the most significant relationship to this litigation given that Uber does business in Florida, Plaintiffs live in Florida and worked as Uber drivers in Florida, and the parties entered in the Services Agreement in Florida.

Florida courts recognize that the term "unconscionable" as it relates to contracts generally means "shocking to the conscience," "monstrously harsh," or "to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Gainesville Health Care Ctr., Inc. v. Weston,* 857 So. 2d 278, 283-84 (Fla. 1st DCA 2003) (internal citations and quotations omitted). Under Florida law, "[b]efore a court may hold a contract unconscionable, it must find that it is *both* procedurally and substantively unconscionable." *Id.* (emphasis in original); *see also Golden v. Mobil Oil Corp.,* 882 F.2d 490, 493 (11th Cir. 1989). The test for procedural unconscionability examines the manner in which the contract was entered, and the court must determine whether the complaining party had a meaningful choice at the time of the contract. *See Fonte v. AT & T Wireless Servs., Inc.,* 903 So.2d 1019, 1025 (Fla. 4th DCA 2005); *Gainesville Health,* 857 So. 2d at 284. The substantive component focuses on the terms of the agreement itself in order to determine whether those terms are unreasonable and unfair. *See Powertel, Inc. v. Bexley,* 743 So. 2d 570, 574 (Fla. 1st DCA 1999); *Fonte,* 903 So. 2d at 1025.

### B.   Procedural Unconscionability

As explained above, procedural unconscionability addresses the fairness of the bargaining process. As Defendant points out, there is no procedural unconscionability because Plaintiffs had the absolute right to opt out of the Arbitration Provision. Notably, the opt out clause appears prominently in the Arbitration Provision. Plaintiffs could opt out of the Arbitration Provision within thirty days; the opt out mechanism was conspicuously

highlighted in the contract; opting out would not have any adverse effect on the other terms of Plaintiffs' contract; and numerous Uber drivers have exercised their right to opt out of the Arbitration Provision.  Even as the party with less bargaining power, Plaintiffs had the ability to reject the Arbitration Provision without consequence to their relationship with Defendant. Therefore, because Plaintiffs were not required to accept the Arbitration Provision, there can be no finding of procedural unconscionability.  *See Sena*, 2016 WL 1376445 at *5-*7 (concluding same under Arizona law).

### C.    Substantive Unconscionability

Substantive unconscionability focuses on the fairness of the contract terms.  Plaintiffs argue that the Arbitration Provision's fee-splitting clause renders the contract one-sided and unfair.  This provision states, in relevant part: "Unless the law requires otherwise, as determined by the Arbitrator based upon the circumstances presented, you will be required to split the cost of any arbitration with the Company."  There is also language further down in the document under the category "Paying For the Arbitration" that states in relevant part: "In all cases where required by law, the Company will pay the Arbitrator's and arbitration fees.  If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned equally between the Parties . . ." Notably, if Plaintiffs prevailed on their claims, they may be entitled to an award of their fees under the FLSA and FDUTPA.

The Court concludes that Plaintiffs have not established the fee-splitting clause renders the cost of arbitration prohibitively or unfairly expensive.  Plaintiffs cannot establish

a likelihood of incurring excessive or unreasonable costs.  Their arguments on this point are entirely speculative.  Indeed, Plaintiffs may incur no arbitration costs under a number of scenarios, including if they prevail on their claims.  Therefore, there can be no finding of substantive unconscionability.  *See Sena*, 2016 WL 1376445 at *7-*8 (concluding same under Arizona law).

Finally, the law is clear that the waiver of class/collective claims cannot render the Arbitration Provision unconscionable.  *See Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1234 (11th Cir. 2012) ("We need not decide whether the class action waiver here is unconscionable under Florida law or if it frustrates the remedial purposes of the FDUTPA, because to the extent Florida law would invalidate the class action waiver, it would still be preempted by the FAA.").

## III.   Conclusion

The parties entered into valid and enforceable agreements to arbitrate questions of arbitrability.  The Court also concludes that the Arbitration Provision at issue here is not unconscionable under Florida law.  In light of the fact that the complaint was improperly brought as a collective/class action, the Court exercises its discretion to dismiss this action so that Plaintiffs may submit their claims to arbitration on an individual basis.

It is therefore **ORDERED AND ADJUDGED** that:

1.     Defendant's Motion to Compel Arbitration and Strike Class/Collective Allegations (Dkt. #7) is GRANTED.

      2.     This action is dismissed without prejudice so that Plaintiffs may, on an individual basis, submit their claims to arbitration.

      3.     The Clerk of Court is directed to close this case and terminate any pending motions as moot.

      **DONE** and **ORDERED** in Tampa, Florida on May 4, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

*S:\Even\2016\16-cv-166 compel arb 7.wpd*